```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA         :    CRIMINAL ACTION
                                 :    NO. 12-108
     v.                          :
                                 :
NIKOS SANTA                      :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         SEPTEMBER 7, 2012

Nikos Santa ("Defendant") pled not guilty to one count of possession of a firearm by a convicted felon. The Court specially listed this case for trial on September 10, 2012. Defendant filed two motions to suppress a firearm recovered pursuant to a warrantless search.[1] The Court held a hearing on September 6, 2012, and, for the reasons that follow, will deny the motions to suppress.[2]

---

[1] Defendant filed two motions to suppress. On May 24, 2012, Defendant, represented by Margaret M. Grasso, Esquire, filed a Motion to Suppress (ECF No. 18) and a Motion for Leave to File Additional Pre-trial Motions and Memorandum of Law (ECF No. 19). Angelo L. Cameron, Esquire, later entered his appearance on behalf of Defendant and filed a Supplemental Motion to Suppress (ECF No. 29). Mr. Cameron argued the motions on behalf of Defendant.

[2] After the hearing, the Government submitted an unsolicited letter providing the Court further argument and legal support for its position. Defendant's counsel submitted a letter objecting to the Government's letter. Given that the submission was not authorized by the Court and that the Defendant did not have an opportunity to respond, the Court will not consider the submission in rendering the instant decision.

I.  **BACKGROUND**[3]

On December 23, 2012, at approximately 6:30 p.m., Defendant was operating his girlfriend's white van with her permission. Defendant's girlfriend, Yolanda Viera, sat in the passenger seat of the van. Ms. Viera has an eleventh-grade education, can read and write in the English language, and is self-employed. No other person was in the vehicle.

Defendant drove through a stop sign at the intersection of Sixth and Brown Streets in Philadelphia, Pennsylvania. Philadelphia Police Officer David DeCrosta, while on patrol without a partner, witnessed the white van run the stop sign and conducted a traffic stop. Officer DeCrosta was in uniform and drove a marked patrol car. While Officer DeCrosta approached the vehicle, he observed the driver nervously stuff an unknown object down near the passenger floorboard. When Officer DeCrosta finally reached the driver-side door, Defendant quickly sat upright.

Officer DeCrosta ordered Defendant to open the driver-side door because the window was inoperable. Officer DeCrosta asked for Defendant's license and registration. Ms. Viera passed over her license and the vehicle's registration. But Defendant

---

[3] The following represents the Court's findings of fact based on the testimony of the parties' witnesses and the exhibits offered into evidence by the Government and Defendant.

was unable to produce a driver's license or identification. Officer DeCrosta asked for Defendant's name and date of birth. Defendant told him his name was "Carlos Colon," but Defendant had difficulty spelling his last name. Officer DeCrosta could not confirm on his police computer the name Defendant initially provided. Defendant then provided the name, "Carlos Santiago," which Officer DeCrosta again was unable to confirm on his police computer. Officer DeCrosta asked Defendant to step out of the vehicle, frisked him for weapons, explained that he could take Defendant in for fingerprinting to confirm his identity, and placed him, not handcuffed, in the back of his patrol car. Defendant finally provided the name "Nikos Santa." Officer DeCrosta discovered a valid bench warrant for a Nikos Santa. Officer DeCrosta arrested Defendant and placed him in handcuffs. By this point, a back-up officer was on the scene and watching Yolanda Viera from the passenger side of the vehicle.

      Officer DeCrosta returned to the vehicle and asked Ms. Viera what Defendant's real name was and what Defendant had shoved in the open school bag between her feet. Ms. Viera replied that she did not know what Defendant placed in the bag and that the bag belonged to her daughter. Officer DeCrosta asked Ms. Viera whether he may look in the bag and advised her that he did not have a warrant and that she was not legally obligated to consent. Ms. Viera orally consented first and

signed a consent-to-search form authorizing Officer DeCrosta to search the bag. Officer DeCrosta made no threats or promises to induce Ms. Viera to consent or to sign the consent-to-search form. Officer DeCrosta then searched the bag and found a U.S. Revolver Company firearm loaded with two live rounds of ammunition. After Officer DeCrosta pulled out the firearm, Defendant yelled from the patrol car, "That's not my gun." Ms. Viera's vehicle was impounded, and officers voluntarily escorted her to a police station to provide a statement.

## II.  DISCUSSION

In his Motion to Suppress (ECF No. 18) and Supplemental Motion to Suppress (ECF No. 29), Defendant argues that the Court should suppress the firearm because Officer DeCrosta conducted a warrantless search without probable cause. Defendant does not contest the validity of the stop. Defendant does not contest whether Ms. Viera was authorized to consent to the search of her child's bag.[4] Rather, Defendant essentially argues:

---

[4]    Indeed, such an argument would be meritless. See Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 399-400 (2009) ("In light of [the societal understanding of superior and inferior with respect to the parent-child relationship], this Court has indicated that a parent can authorize a third-party search of a child by consenting to such a search, even if the child denies his consent.").

> Even though identification of Mr. Santa was confirmed and [Ms. Viera's] identification was confirmed, the Philadelphia Police Officer, avoiding the Constitutional requirement of obtaining a Search Warrant, via pretextual request, requested and obtained the consent of [Ms. Viera] to search the vehicle and the bag located between her feet. As there was no fear for any officer's safety, nor any exigent circumstances and the stop was orderly, the vehicle and the bag inside the vehicle were searched without a warrant, and a gun was recovered inside the bag.

Supplemental Mot. to Suppress 9. Defendant next states the requirements for a warrantless search of a vehicle incident to a lawful arrest set out in Arizona v. Gant, 556 U.S. 332 (2009). Defendant misunderstands the law.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."). A warrantless search is per se unreasonable unless the search falls within one of the recognized exceptions to the warrant requirement. Katz v. United States, 389 U.S. 347, 357 (1967). Consent is a well-recognized exception to the requirement of a warrant and probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 222 (1973); United States v. Lockett, 406 F.3d 207, 211 (3d Cir. 2005). The Government has the burden to prove by a preponderance of the evidence that consent was freely and voluntarily given. Id. at 222-23; United States v. Velasquez, 885 F.2d 1076, 1081 (3d Cir. 1989). Whether

5

consent was voluntarily given is a factual finding that the Court determines by considering the totality of the circumstances:

> Some of the factors taken into account have included the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep. In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted.

Velasquez, 885 F.2d at 1082 (quoting Schneckloth, 412 U.S. at 226); see also United States v. Givan, 320 F.3d 452, 459-60 (3d Cir. 2003) (noting the following factors: "the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting individual"). Furthermore, an individual's knowledge that he may refuse consent, although not required, is a factor in the totality-of-the-circumstances analysis. Schneckloth, 412 U.S. at 227.

Here, Ms. Viera voluntarily consented to the search. Ms. Viera orally consented before Officer DeCrosta searched the bag, even after he informed her of her right to refuse consent and that he did not have a warrant. Even more, Ms. Viera signed a written consent-to-search form expressly acknowledging her consent, that she had a right to refuse consent, and that

Officer DeCrosta did not have a warrant.[5] There is no indication that the officers coerced or intimidated Ms. Viera, that they threatened her or promised her anything in exchange for her consent, that their weapons were drawn at any point, or that any other subtle indicia of coercion were present. Nor was Ms. Viera under arrest. In fact, she consented on a public street, not in the confines of a police station or a similarly coercive environment. Furthermore, Ms. Viera has an eleventh-grade education, reads and writes in the English language, and operates her own transportation business.

Defendant argues that Ms. Viera was overwhelmed – that is, did not exercise free will - by the mere presence of police officers and the flashing lights of the patrol car. Defendant

---

[5] At the hearing on Defendant's motions to suppress, Ms. Viera recanted her earlier grand jury testimony that she voluntarily consented to the search. Ms. Viera's testimony is unreliable. Before the grand jury, Ms. Viera testified that she provided oral consent before the search and signed the consent-to-search form after the search. She also testified that she voluntarily signed the form. Later during her grand jury testimony, she testified that her statement to police detectives that she signed the form before Officer DeCrosta searched the bag was true. Finally, at the suppression hearing, Ms. Viera testified that she orally consented to the search then signed the form after the search but that she consented only because Officer DeCrosta threatened to put her in jail if she did not consent and tell him Defendant's true name. Ms. Viera then testified that she consented to the search under threat of going to jail but, without further explanation, did not disclose Defendant's true name. The Court concludes that the different and internally incoherent versions of Ms. Viera's testimony and her demeanor while on the stand render her testimony unreliable as to this issue.

further argues that Ms. Viera was concerned about getting back home to her child and that the incident took place only one day before Christmas Eve. Based on the totality of the circumstances, however, the evidence of record indicates that Ms. Viera's consent was "the product of an essentially free and unconstrained choice" and that her will was not "overborne [or her] capacity for self-determination critically impaired." Schneckloth, 412 U.S. at 225; see also United States v. Watson, 423 U.S. 411, 424-25 (1976) (finding voluntary consent where no overt act or threats of force used even though consenting individual was under arrest, in custody, and not informed of right to withhold consent). And there is no basis for a finding that, because of the officers' coercion, Ms. Viera's consent was "no more than a pretext for the unjustified police intrusion." Schneckloth, 412 U.S. at 228.

Defendant's argument that the officer was not in danger and exigent circumstances did not exist is immaterial. Indeed, the Supreme Court approved the use of consent searches in situations where an officer may otherwise lack grounds to conduct a lawful search or arrest.[6] Here, Officer DeCrosta

---

[6]   The Court explained:

> In situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable

8

observed Defendant dispose of an item in the bag as he approached the vehicle, and Defendant provided different names to Officer DeCrosta during the stop. Officer DeCrosta obtained Ms. Viera's voluntary consent to search the bag after informing her of her right to refuse consent. Finally, Defendant's reliance on Arizona v. Gant, 556 U.S. 332 (2009) for the circumstances wherein law enforcement may conduct a warrantless search of a vehicle incident to an arrest is misplaced because the Government has shown by a preponderance of the evidence that Ms. Viera voluntarily consented to the instant search. In other words, the officer conducted a consent search, not a search

---

> evidence. In the present case for example, while the police had reason to stop the car for traffic violations, the State does not contend that there was probable cause to search the vehicle or that the search was incident to a valid arrest of any of the occupants. . . . And in those cases where there is probable cause to arrest or search, but where the police lack a warrant, a consent search may still be valuable. If the search is conducted and proves fruitless, that in itself may convince the police that an arrest with its possible stigma and embarrassment is unnecessary, or that a far more extensive search pursuant to a warrant is not justified. In short, a search pursuant to consent may result in considerably less inconvenience for the subject of the search, and, properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity.

Schneckloth, 412 U.S. at 227-28.

9

incident to a lawful arrest. Therefore, the Court will deny Defendant's Motion and Supplemental Motion to Suppress.[7]

**III. CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's Motion to Suppress (ECF No. 18) and Supplemental Motion to Suppress (ECF No. 29). The Court will grant <u>nunc pro tunc</u> Defendant's Motion for Leave to File Additional Pre-trial Motions and Memorandum of Law (ECF No. 19). An appropriate order will follow.

---

[7] Because Officer DeCrosta's search is valid based on Ms. Viera's voluntary consent, the Court does not reach whether Defendant lacks standing to object to the search. <u>See</u> <u>Velasquez</u>, 885 F.2d at 1083 n.5 (declining to consider whether defendant lacked standing to object to search because valid consent precluded suppression of evidence).